# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN HILL, Individually and On Behalf of All Others Similarly Situated, | ) | **CASE NO. 1:10cv07838-PAC** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHINA-BIOTICS, INC., SONG JINAN, LI CHI YUEN a/k/a RAYMOND LI, LEWIS FAN, YAN YIHONG a/k/a EVA YAN, and TRAVIS CAI, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF JOHN HILL AND NUREDDIN NEJIM FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF CO-LEAD COUNSEL AND LIAISON COUNSEL**

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Central Laborers' Pension Fund v. SIRVA, Inc., et. al.*, No. 04 CV-07644
(N.D. Ill. November 2, 2007)…………………………………………..………………14

*Goplen v. 51job*, Inc.,
No. 05 C 0769, 2005 U.S. Dist. LEXIS 15059 (S.D.N.Y. July 26, 2005)…………..............9

*In re Cavanaugh*, 306 F.3d 726, 732-733 (9th Cir. Cal. 2002) …………………………………13

*In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. N.J. 2001)……………………………...13

*In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y 2005)……………………..............10, 11

*In re Freidman's Sec. Litig.*, 1:03-CV-3475-WSD (N.D. Ga. Feb. 5, 2009)……………………15

*In re HealthTronics, Inc. Shareholder Litigation*,
Travis County, Texas, Cause No. 2010-01493………..……………………………………16

*In re Helen of Troy Limited Securities Litigation*, No. EP-05-CA-431-H
(W.D. Tex. June 19, 2008)……………………………………………………………...15

*In re Initial Public Offering Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005)…………..............11, 12

*In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.*,
4:07 Civ. 9633 (JSR) (S.D.N.Y. Jan. 20, 2009)……………..…………………………………15

*In Re Sonicwall, Inc. Shareholder Litigation*, Lead Case No. 1:10-CV-173966………………..16

*Klien v. FPL Group, Inc.*, Case No. 02-20170-civ-Gold (S.D. Fla. Nov. 23, 2004)…………15-16

*Lax v. First Merchs. Acceptance Corp.*,
No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug 6, 1997)…………..............10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
229 F.R.D. 395, 402-04 (S.D.N.Y. 2004)………………………………………………8, 11

*Priest  v. Zayre Corp.*,
118 F.R.D. 552, 555 (D. Mass. 1988)………………………………………..............11

*Tyco International, Ltd. Sec. Litig.*, No. 02-1335-B (D. N. H. 2002)……………………………16

**STATUTES**

15 U.S.C. § 78u-4(a)(1)……………………………………………………………...7

15 U.S.C. § 78u-4(a)(2) ……………………………………………………………... 5

15 U.S.C. § 78u-4(a)(3)(A)(i)………………………………………………………….8

15 U.S.C. § 78u-4(a)(3)(B)……………………………………………………………4, 10, 12

15 U.S.C. § 78u-4(a)(3)(B)(iii)……………………………………………………….4, 9, 13

15 U.S.C. § 78u-4(a)(3)(B)(v) ……………………………………………………5, 13

**RULES**

Federal Rule of Civil Procedure Rule 23(a) ……………………………………….10, 11

Federal Rule of Civil Procedure Rule 23(a)(3) ……………………………………11

Federal Rule of Civil Procedure Rule 23(a)(4)………………………………………..12

**LEGISLATIVE MATERIALS**

H.R. Conf. Rep. No. 104-369 (1995)………………………………………………… 13

Plaintiff John Hill ("Hill") and Class Member Nureddin Nejim ("Nejim", and collectively, "Movants") respectfully submit this memorandum in support of their motion for appointment as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of their selection of the law firms of Saxena White P.A. ("Saxena White") and Ryan & Maniskas ("R&M") to serve as Co-Lead Counsel for the Class and The Law Offices of Curtis V. Trinko, LLP ("Trinko") to serve as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

On September 17, 2010, Sarbeswar Mohapatra ("Mohapatra") commenced a securities class action in the United States District Court for the Central District of California (the "*Mohapatra* Action"), on behalf of all persons who purchased or otherwise acquired China-Biotics, Inc. ("China-Biotics" or the "Company") securities between July 10, 2008 and August 30, 2010, inclusive (the "Class Period"). Hill filed the above-captioned securities class action in this Court, alleging the same or similar claims against Defendants, on October 13, 2010 (the "*Hill* Action"). Both actions were brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder. Defendants named in these actions include China-Biotics and certain of China-Biotics' officers.

The PSLRA directs the Court to appoint as Lead Plaintiff the movant or group of movants that have demonstrated the "largest financial interest in the litigation" and also meet the typicality and adequacy prongs of Fed. R. Civ. P. 23. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii). As demonstrated herein, Movants have sustained losses totaling $62,539.51.[1] Movants' losses are

---

[1] The losses suffered by Movants are not the same as their legally compensable damages, the measure of which is often a complex legal question that cannot be determined at this stage of litigation. The approximate losses can,

believed to be the largest among purported class members seeking appointment as Lead Plaintiff.[2]  Movants are unaware of any other class member that has filed an action or an application for appointment as Lead Plaintiff that sustained greater financial losses.[3]  Movants understand the commitments of a Lead Plaintiff and, as demonstrated herein, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  In addition, Movants have retained competent and experienced counsel to prosecute this securities litigation and seek the Court's approval of their selection of Counsel.  Accordingly, under the PSLRA Movants are presumptively the most adequate plaintiffs and entitled to appointment as the Lead Plaintiffs for the class.

Pursuant to the PSLRA, the Lead Plaintiff—subject to Court approval—is entitled to select lead counsel for the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Here, Movants have selected the law firms of Saxena White and R&M to serve as Co-Lead Counsel and Trinko as Liaison Counsel.  Saxena White and R&M have extensive experience successfully litigating securities class actions together and possess the resources necessary to vigorously pursue this litigation on behalf of the class.  For the reasons summarized herein and discussed more fully below, Movants' motion should be approved in its entirety.

## STATEMENT OF FACTS[4]

China-Biotics is a Delaware corporation, which is actively traded on the NASDAQ, and has principal offices located in Pudong, Shanghai, in the People's Republic of China.  ¶¶11, 21.  Beginning on July 10, 2008, the Company commenced a pattern of filing misleading statements

---

however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(B) and based upon reference to information concerning the current market for the Company's securities.
[2] The transactions of Movants in China-Biotics securities during the Class Period are set forth in the individual certifications of Hill and Nejim attached to the Declaration of Christopher S. Jones ("Jones Decl.") dated October 9, 2010, and November 15, 2010, respectively.
[3] A chart setting forth Movants' losses is attached as Exhibit C to the Jones Decl.
[4] These facts were derived from the allegations contained in the class action styled as *John Hill v. China-Biotics, Inc., et al.,* Case No. 1:10-cv-07838-PAC (S.D.N.Y., Filed on October 13, 2010).

and/or omissions in regards to the number of retail outlet stores that it owned in China, which included misleading references as to the stores' existence in numerous Company SEC filings. *See* ¶¶31 – 57. These statements were false and misleading because they contradicted Company statements filed with Chinese authorities, and the purportedly hundreds of retail stores discussed numerous times in SEC filings did not actually exist. ¶58.

Further, on June 29, 2009, China-Biotics filed a notification with the SEC informing the agency that it would not be able to file its annual report for the fiscal year ended March 31, 2009 on time, due to "delays in the review and confirmation of back-up materials and supporting documentation required by the Company's auditors…". ¶59. This announcement caused the Company's stock to fall from $16.35 per share to $12.22 per share on June 29, 2009, and then fall to a closing price of $10.80 per share on June 30, 2009. ¶60. Further, the Company's CFO at the time, Defendant Fan, announced his resignation on October 23, 2009, which caused the Company's stock to drop again from $14.42 per share on October 23, 2009 to $0.72 per share on October 26, 2010. ¶63.

The Company's business operations, financial statements, and the existence of retail stores were specifically questioned by analysts at CitronResearch, in reports dated August 30, August 31, and September 14, 2010. ¶¶39, 41-42. In the reports, CitronResearch discussed various aspects of China-Biotics' business, including the allegedly misleading disclosures concerning the existence of retail stores, discrepancies on reported interest figures, and the differences between Company SEC filings compared to those documents filed with Chinese authorities. *See* ¶¶65, 67, 69.

The *Hill* Action alleges that, in public SEC filings throughout the Class Period, Defendants made materially false and misleading statements and/or omissions about China-

Biotics' financial condition and business prospects, including but not limited to: (1) that as of March 31, 2010 there was not actually 111 retail outlets in Shanghai and other Chinese cities, despite what was disclosed to investors in multiple SEC filings during the class period; (2) that as a result of there being virtually no retail outlets or stores, all of the Company's financial statements were materially misleading, and may need to be restated; (3) SEC filings contained incorrect and materially misleading interest figures regarding the Company's cash holdings, which may need to be restated; (4) that the Company's financial statements and disclosures to the SEC differed significantly from financial figures reported to local Chinese authorities, and as such are materially misleading and may need to be restated; and (5) that the money raised from the September 2009 Offering was not put towards expansion of retail outlets and stores, despite the Company's claims to the investing public in multiple SEC filings and press releases. ¶¶72-73.

## ARGUMENT

## I.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

### A.    The Procedural Requirements Pursuant To The PSLRA

The PSLRA sets forth a detailed procedure that governs the appointment of a Lead Plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i). Specifically, the PSLRA provides that, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs who filed the initial complaint shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)      that not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiffs of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i).

Furthermore, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as Lead Plaintiffs in response to any such notice within 60 days after the date of publication of the notice.  Under this section, the court "shall" appoint the "most adequate plaintiff," and is to presume that such plaintiff is the person, or group of persons, which:

(aa)     has either filed the complaint or made a motion in response to a notice…

(bb)     in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)     otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I).  *See generally Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004) (Sweet, J.).

As discussed below, Movants have complied with the procedural prerequisites of the PSLRA.  Moreover, Movants believe that they have the largest financial interest in the litigation, and otherwise meet the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure.

**B.     Movants Are "The Most Adequate Plaintiffs"**

**1.     Movants Have Submitted a Motion for Their Appointment As Lead Plaintiffs**

Under the deadlines established by the PSLRA, any class members interested in moving for the appointment as Lead Plaintiff in this matter must do so within 60 days of the date of publication of the notice of the first filed action, or September 18, 2010, when notice was filed in

the *Mohapatra* Action.  15 U.S.C. §78u-4(a)(3)(A) and (B).  As this motion is filed within the requisite time frame after publication of the notice, Movants' motion is timely.

### 2.    Movants Have the Largest Financial Interest Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall presume that the most adequate plaintiff is the "person or group of persons" that represent(s) the largest financial interest in the relief sought by the action and who also meets the requirements of Rule 23.

The PSLRA, however, does not provide a method for determining the relative financial interests of the Lead Plaintiff movants.  Courts are generally divided on how relative financial interest should be determined.  Briefly, some courts have adopted the "FIFO" (First-In-First-Out) methodology.  Under this methodology, first-purchased shares (even if purchased before the class period) are offset against first-class purchased sales.  *See, e.g., Goplen v. 51job*, Inc., No. 05-cv-0769, 2005 U.S. Dist. LEXIS 15059, at *8 (S.D.N.Y. July 26, 2005) (Haight, J.).  Other courts have adopted the "LIFO" methodology.  Under this methodology, last-purchased sales are offset against first-class period sales; any remaining shares sold during the class period are generally offset against shares held at the beginning of the class period.

During the Class Period, Movants purchased 18,300 shares of China-Biotics common stock at prices artificially inflated by the materially false and misleading statements issued by Defendants.  *See* Jones Decl., Exhibit C.  In addition, Movants incurred a substantial loss of approximately $62,539.51 on their transactions in China-Biotics stock when corrective disclosures removed the inflation caused by the Defendants' fraud.  *Id*.  In this case, the LIFO and FIFO analysis yields the same financial interest: $62.539.61.  *See* Jones Decl., Exhibit C.

In addition to the FIFO/LIFO analysis, courts generally analyze four factors—referred to as the "*Lax* Factors"[5]—to determine financial interest.  The *Lax* Factors include: (i) the number of gross shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate loss suffered.  *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005).  In light of each of these factors, Movants' financial interest is as follows:

| Total Shares Purchased During Class Period | Net Shares Purchased During Class Period | Net Funds Expended During Class Period | Approximate Loss |
|---|---|---|---|
| 18,300 | 18,300 | $260,898 | $62,539 |

As demonstrated herein, the Movants believe that they have the largest financial interest in this case.

### 3.      Movants Are Otherwise Qualified under Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to be the presumptively most adequate plaintiff.  15 U.S.C. §78u-4(a)(3)(B).  To this end, Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two—typicality and adequacy—are relevant in the Lead Plaintiff analysis.  Consequently, in deciding the motion to serve as Lead

---

[5] *See Lax v. First Merch. Acceptance Corp.*, No. 97-Civ-2715, 1997 WL461036, at *5(N.D. Ill. Aug 11, 1997).

Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412. As detailed below, Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

### a.    Movants' Claims are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988); *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. at 102 (finding a Lead Plaintiff movant's claim to by typical where "[m]embers of the class claim to have been injured by a fraudulent inflation of eSpeed's stock price" and the movant "makes the same claim."). However, the requirement that the proposed class representatives' claims be typical of the claims does not mean that the claims be identical. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412.

Movants seek to represent a class of purchasers of China-Biotics common stock that have identical, non-competing and non-conflicting interests. Movants satisfy the typicality requirement because, just like all class members, they: (1) purchased or acquired China-Biotics common stock during the Class Period; (2) at prices artificially inflated by the Company's materially false and misleading statements and/or omissions; and (3) suffered damages when

corrective disclosures removed the inflation caused by the Defendants' fraud.  Thus, Movants' claims are typical of those of other class members since their claims arise out of the same course of events.

### b.        Movants Fulfill the Adequacy Requirement

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to: (1) whether there are any conflicts between the interests of the movant and the members of the Class; (2) whether the movant is an adequate representative of the Class; (3) whether the interests of the movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests.  *See* 15 U.S.C. §78u-4(a)(3)(B); *see also In re Initial Public Offering Sec. Litig.*, 214 F.R.D. at 121.

Here, Movants will more than adequately represent the interests of the class.  First, Movants' interests are clearly aligned with the interests of the members of the proposed class and there is no antagonism or conflict whatsoever between their respective interests and the interests of the Class members.  Second, Movants share common questions of law and fact with the members of the Class and their claims are typical of the other class members.  As evidenced by the injury suffered by Movants, who collectively acquired 18,300 shares of China-Biotics common stock at prices artificially inflated by the Company's materially false and misleading statements, Movants' interests are clearly aligned with the interests of the other members of the Class.

Furthermore, Movants have already taken significant steps demonstrating that their willingness to protect the interests of the Class: (a) Movants have executed sworn certifications detailing their Class Period transactions (*See* Jones Decl., Exhibit B); (b) Movants have

expressed their willingness to serve as Lead Plaintiffs in this action (*See id.*); (c) Movants timely moved the Court to be appointed as Lead Plaintiffs; and (d) Movants have retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner in order to secure the best result for the class. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. N.J. 2001).

Thus, Movants, in addition to having the largest financial interest, also satisfy the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. Therefore, Movants satisfy all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiffs in this action pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii).

## II.   THE COURT SHOULD APPROVE OF MOVANTS' SELECTION OF CO-LEAD COUNSEL AND LIAISON COUNSEL

Pursuant to the PSLRA, the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  15 U.S.C. §78u-4(a)(3)(B)(v).  Moreover, the Court should not disturb Lead Plaintiff's choice of counsel unless "necessary to protect the interests of the plaintiff class."  *See* Statement of Managers—The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H14691-08, at H13700 (daily ed. Nov. 28, 1995); *see also In re Cavanaugh*, 306 F.3d 726, 732-733 (9th Cir. Cal. 2002) (The court should honor the lead plaintiff's selection of counsel except in extreme circumstances, where the selection of counsel appears "irrational" or is otherwise clearly against the interests of the class members).

In that regard, Movants have selected the law firms of Saxena White and R&M to serve as Co-Lead Counsel to pursue this litigation on their behalf and on behalf of the class, and have selected Trinko to serve as Liaison Counsel.  As mentioned above, Saxena White and R&M possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  As demonstrated in their

firm resumes, Saxena White and R&M have been appointed as lead or co-lead counsel in landmark, precedent-setting class actions. *See* Jones Decl., Exhibit D. Accordingly, the Court may be assured that, in the event the instant motion is granted, the members of the Class will receive the highest caliber legal representation available.

Saxena White is a well-established, nationwide firm with an extensive and impressive track record of prosecuting complex lawsuits, including securities class actions, shareholder derivative cases and merger & acquisition litigation. With offices in Florida, Massachusetts, and Montana, Saxena White is well-positioned to handle complex shareholder litigation across the country. In litigating securities class actions, shareholder derivative actions, breach of fiduciary duty class actions, merger & acquisition challenges and consumer class actions, Saxena White has repeatedly demonstrated an ability to provide plaintiffs with superior representation as Lead Counsel. The firm's considerable efforts have led to groundbreaking settlements and judgments resulting in a collective recovery in the hundreds of millions of dollars. In addition, Saxena White has been involved in groundbreaking litigations resulting in significant monetary benefits for shareholders totaling hundreds of millions of dollars. Courts throughout the country have recognized that Saxena White has the experience and resources to successfully and efficiently prosecute complex class and derivative actions as Lead and Co-Lead Counsel.

For instance, acting as sole Class Counsel in a securities fraud action against SIRVA, Inc., Saxena White gained final approval from the Northern District of Illinois of a $53.3 million settlement for shareholders. *See Central Laborers' Pension Fund v. SIRVA, Inc., et. al.*, No. 04 CV-07644 (N.D. Ill. November 2, 2007). In addition to the monetary component of the settlement, SIRVA made significant reforms to its internal controls policies, including discarding the SIRVA Board of Directors plurality standard for director elections, and strengthening

requirements regarding director attendance at shareholder meetings. The development and implementation of these reforms (which the company recognized was a main result of the litigation) was truly a testament to the negotiating and litigation acumen that Saxena White demonstrated during the course of this complex action.

The Western District of Texas, El Paso Division, granted final approval of a $4,500,000 securities fraud class action settlement in which Saxena White served as sole Class Counsel. *See In re Helen of Troy Limited Securities Litigation*, No. EP-05-CA-431-H (W.D. Tex. June 19, 2008). Further, the Honorable William S. Duffey, Jr. of the Northern District of Georgia, also noted that Saxena White's lawyers act with "dignity and respect," produce "well-done pleadings," are "thorough [and] insightful," and "fight[] as hard but as honestly and professionally as they can for the interest of their clients." *In re Freidman's Sec. Litig.*, 1:03-CV-3475-WSD (N.D. Ga. Feb. 5, 2009).

Similarly, the Honorable Judge Jed S. Rakoff, a noted Judge of the Southern District of New York, recognized that Saxena White had performed "excellent work" in this "important case" on behalf of Merrill Lynch and its shareholders worldwide. *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.*, 4:07 Civ. 9633 (JSR) (S.D.N.Y. Jan. 20, 2009). In approving the settlement in *Klien v. FPL Group, Inc.*, United States District Court Judge Alan S. Gold recognized that the action presented "complex and novel legal issues…[where] the likelihood of success for Plaintiffs at the outset of the case was very low." In approving the exceptional settlement that was eventually reached after years of hard fought litigation, Judge Gold stated:

> Plaintiffs' counsel, a highly experienced group of lawyers with national reputations in large securities class actions, recovered an unprecedented amount of money for shareholders as a result of this settlement - $22.25 million in

addition to sweeping corporate governance changes which FPL Group has agreed to implement.[6]

Saxena White is also currently serving as Co-Lead Counsel in one of the most significant derivative cases in the nation, *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y. Filed). The firm was appointed as Co-Lead Counsel from amongst numerous firms, with Judge Chin expressly noting that **Saxena White is "*experienced and qualified to serve as lead counsel.*"** Similarly, Saxena White is also serving as Co-Lead Counsel in another noteworthy derivative action, *Lee P. Rosky v. Todd S. Farha, et al.*, No. 8:07-cv-1952-VMC-MAP (Consolidated) (M.D.Fla. Filed Nov. 7, 2007), involving claims against WellCare Health Care Plans, Inc.

In addition, R&M, while newly formed, brings over 35 years of experience in litigating shareholder class actions. R&M attorneys are nationally recognized as having unique legal skills and abilities in national class actions. The attorneys of R&M have throughout their careers substantially contributed to the recovery of billions of dollars on behalf of aggrieved shareholders. Most notably, Ms. Ryan actively litigated and assisted in achieving the historic $3.2 billion settlement reached in the *Tyco International, Ltd. Sec. Litig.*, No. 02-1335-B (D. N. H. 2002), which was the largest settlement ever paid by a single corporate defendant.

R&M's experience in securities class actions also establishes it as highly qualified to represent the interests of the class. For example, R&M was appointed Co-Lead Counsel in the *In Re Sonicwall, Inc. Shareholder Litigation*, Lead Case No. 1:10-CV-173966, Superior Court of California, County of Santa Clara. Additionally, R&M served as co-lead counsel in the *In re HealthTronics, Inc. Shareholder Litigation*, Travis County, Texas, Cause No. 2010-01493, where it helped achieve significant benefits for shareholders in the matter. As such, R&M has

---

[6] *Klien v. FPL Group, Inc.*, Case No. 02-20170-civ-Gold (S.D. Fla. Nov. 23, 2004) (Order and Final Judgment of Dismissal at 9).

acquired substantial expertise in the securities class action context and has the experience to manage this action effectively and efficiently, enabling it to maximize the result for the proposed class.

In addition, Trinko has extensive securities litigation experience, including serving as Lead Counsel and Liaison Counsel in numerous complex class actions. Trinko is an AV-rated law firm which specializes in complex commercial litigation, and particularly, litigation involving violations of federal and state securities and corporate laws, as well as claims involving officers' and directors' liability, corporate governance practices and procedures, and claims of excessive executive and advisory compensation. The firm has directly participated in the recovery of substantial settlements on behalf of defrauded shareholders injured by illegal corporate activities, or shareholders denied the appropriate valuation for their equity ownership in the wake of successful and/or attempted corporate buy-outs, takeovers and other transactions involving corporate restructurings, asset sales and/or mergers and acquisitions. Moreover, the firm's efforts have assisted in restoring many millions of dollars to corporate treasuries depleted by the illegal practices and/or breaches of fiduciary duties by their corporate officers and directors. The firm has also represented both individual and corporate defendants in numerous securities class actions, investor claim-related litigation, shareholder derivative litigation, and other commercial litigation. In addition, the Trinko Firm serves as liaison counsel for numerous out-of-town law firms prosecuting a variety of investor-related, anti-trust, or complex consumer-related litigation pending in the New York State and Federal courts. A firm resume detailing the Trinko Firm's experience in this field is attached in Exhibit D.

As there is nothing to suggest that Movants' or their counsel will not fairly and adequately represent the Class, or that Movants are subject to unique defenses—which is the

*only* evidence that can rebut the presumption of inadequacy under the PSLRA—this Court should appoint Movants as Lead Plaintiffs and approve their selection of Saxena White and R&M as Co-Lead Counsel and Trinko as Liaison Counsel for the Class.

## CONCLUSION

For all of the foregoing reasons, Movants respectfully request that this Court: (1) appoint Movants as Lead Plaintiffs pursuant to §21D(a)(3)(B); and (2) approve of Movants' selection of Saxena White and R&M as Co-Lead Counsel and Trinko as Liaison Counsel.

Dated: November 16, 2010

By: */s/ Christopher S. Jones*
**SAXENA WHITE P.A.**
Christopher S. Jones (CJ-4131)
Joseph E. White III
Maya Saxena
2424 N. Federal Highway
Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

**RYAN & MANISKAS, LLP**
Richard A. Maniskas
995 Old Eagle School Rd., Ste. 311
Wayne, PA 19087
Tel: (484) 588-5516
Fax: (484) 450-2582

*Proposed Co-Lead Counsel*

**LAW OFFICES OF CURTIS V. TRINKO, LLP**
Curtis V. Trinko (CT-1838)
16 West 46th Street, 7th Floor
New York, New York 10036
Tel: 212 490-9550
Fax: 212 986-0158
Email: Ctrinko@trinko.com

*Proposed Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of November, 2010, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s/Christopher S. Jones*
Christopher S. Jones